We'll hear the next case, Cruz v. Lynch. Good morning. Good morning. And may it please the Court, my name is Mary Foden and I represent the petitioner in this case, Esther Cruz, in her petition for review. Your Honors, this case is about a husband and a wife who petitioned jointly to remove the conditions on Esther Cruz's residency. For the reasons outlined in my brief, the case was essentially stacked against her. It was mired with judicial error, both at the I.J. and at the Board level. The Board adopted not only the 2012 decision by the I.J., but the 2011 decision, which is based on testimony entirely not in the record before this Court. And it is unclear why the judge could not just have issued a brand-new decision in his 2012 decision, but he decided not to. He instead said, I'm going to adopt my prior decision. Could you tell us what findings are problematic for you? Well, the findings were that Esther and Hector Cruz submitted a date-altered lease. That was the primary issue in this case, was that they came before the Court with dirty hands. They had submitted a date-altered lease. But to the judge, from the very onset, they indicated that this was a date-altered lease, they accepted this. They never denied that, which is what distinguishes it from Siwi and Borracova, which was that the respondents in those cases actually stated, no, these documents are not fraudulent. They are legitimate. They are authentic. In this case, they came forward and— What about—how do you respond to this, just to help us understand what you're saying? She did submit—didn't see a falsified lease indicating that she was renting the property until 2007. That is correct. The lease was originally authentic when she first rented the house in 2005, and there was a lease issued by Mr. Iescas. But then later, the house was purchased by Ms. Cruz and her ex-husband, and therefore, the date altered the second lease, which was from 2006. So they pro-offered. They went before the Court, and they even brought in the testimony of Mr. Iescas to say, yes, that second lease was date-altered. So they were never—you know, the doctrine of falsam in uno, falsam in omnibus, also requires an assessment of corroborating evidence that exists in the record. And instead, the judge here said, well, I've heard testimony from three additional witnesses, and that doesn't change my mind. There's no balance here. There's no assessment of why that testimony does not corroborate the evidence of 10 years of shared marital union here. The immigration judge and the board is tasked with reviewing the material issues at court, which are, did the couple marry for love, which they testified credibly to that. The judge never made any adverse findings on their credibility as to why they married and whether they were continuing to live in marital union. They also both testified that they lived together at 214 Freeman. So essentially, they pro-offered that they submitted a date-altered lease, but here's the corroborating evidence that we've lived here. But by the same token, Hector's W-2s listed a different address than hers, so there was evidence in the record in which he and she had made representations in which they were not living at the same address, correct? Well, yes, Your Honor, in the sense that- So this is a substantial evidence question, isn't it? Well, it is relating to a substantial evidence- There is evidence that supports the conclusion that they were not living at the same residence. No, Your Honor, I would submit that he actually, the judge found there was a minor issue, the W-2s in his finding. We don't have the authority anymore to do it on a minor issue or not. Congress took that authority away from us. If there's record evidence that supports the conclusion, aren't we stuck with it? Well, it depends on how do we view the corroborating evidence. These are W-2s. These are W-2s. You go into your employer and your employer says, where do you live? You put down an address. Well, their federal returns for that year showed that they filed together, and they also brought in the corroborating testimony of other witnesses. I concede that there's other evidence that goes in their direction. I don't disagree with you. The question is whether there's some evidence that supports in the record, some evidence in the record that supports the conclusion reached by the hearing examiner or the BIA, right? Your Honor, we submit that the documentary evidence does not outweigh the corroborated evidence that was submitted. There were three witnesses that came forward that testified to not just the first years and the first years of a marriage. You and I both know the problem. You used the word outweigh. Pardon? That's not what we do. We don't weigh the evidence anymore, do we? Look, God's work doing this kind of work. So you don't have a hostile venture, but the problem is that there are limitations to what we can and cannot do, and this is a substantial evidence standard in which credibility determinations, absent some kind of total arbitrary and capricious kind of determination, we cannot interfere with it, can we? Yes, Your Honor, can if it's not supported by substantial evidence, and the judge himself found that that was a minor issue because Hector had the opportunity to explain why had he had W-2s at a different address, and he answered the reasons for that was his bad credit. So the judge gave him an opportunity to say why did you have your W-2s going to another address, and he responded to that. Was the I.J. compelled to believe Hector? Was the I.J. compelled to believe Hector? Well, he should make an adverse finding if he does not find that to be credible, right? So in this case, really, in addition to all of the credibility problems, there's also another issue that I pointed out in my brief, which was that the credibility findings in this case are not clear at all. The BIA straddles it and says, well, it is and it is not, or some aspects are credible and some are not. Given, in this case, it's DHS's burden to prove that they did not live together, then the testimony that they did have, which they offered to the court, which was that they were living together, that should be taken as credible, and there's no indication here that any of the credibility findings were held in a positive manner toward them. Also, there was the other issue that I would like to discuss with the court, which was the consolidation of these proceedings. And I make it the argument in my brief that consolidation was improper because they prejudiced Mrs. Cruz. And the primary reason is that Judge Strauss's 2011 decision is filled with adverse findings relating to Mr. Lovano, who was Mrs. Cruz's ex-husband. That evidence would not have been submitted had these cases not been consolidated, and that is why I argue that it prejudiced Mrs. Cruz. There's never any testimony that she had any control over the forms that he filled out at the time that he did his residency. And, in fact, Mr. Lovano brought testimony forward from his ex-wife to attest that she and he lived together during all times of their marriage. Why was that not brought forward as positive? Your adversary will argue, based on the briefs, that the petitioner had a full and fair opportunity to challenge the denial of a joint petition. Yes, Your Honor. And so that's, you know, if you want to show, you've got to show some problem with that argument. Thank you, Your Honor. And to the prejudice that I'm pointing to is the submission and the weight that the judge also placed. He stated that that was an adverse factor, that Mr. Lovano had not included their children in his 751, but there's no evidence whatsoever that she had any control. So would that evidence have been admitted in her removal proceeding had these cases not been consolidated? And I would submit that it would not have been, and that it tainted it to the extent that the judge, on remand when he did the new hearing, he said, well, there's no reason for me to change my prior decision. And there was no evidence that he showed any consideration for any of the further corroborating evidence or any of the other witnesses that presented themselves on that day, and that shows the bias and the prejudice and how it tainted this case. I see that my time has expired. Thank you. You'll have some time in rebuttal. I do, Your Honor. Thank you. Thank you. May it please the Court, Your Honors, Tim Randlitz on behalf of the United States Attorney General Loretta E. Lynch. The petitioner challenged the decision of the agency finding that DHS met its burden by showing, by preponderance of the evidence, that she lacked a bona fide marriage to her United States citizen husband, Hector Cruz. She challenges this decision in three ways. Two are procedural challenges, and three, the third one is substantive. I think we can address the procedural challenges briefly, one being that the immigration judge improperly adopted and affirmed his prior decision. As the panel noted, there's nothing different that petitioner presented in the later testimony that differed with the explanation she presented at the IG the first time. The transcripts from that hearing were not available, is that correct? That's correct. They were improperly recorded or not recorded at all. But you go through the explanations in that written decision by the IJ, the same explanations for the inconsistencies were provided again in 2012. Was it proper for the IJ to adopt his reasoning from a prior decision in light of the fact that the transcripts from the hearing were not available? It was proper in this instance because nothing changed later on. He was able to adopt and affirm his decision because the explanations never changed. They're recorded in his decision, and later on, they're all rerecorded again in petitioner's testimony, Hector's testimony, Melissa Lovano's testimony. They presented the exact same answers. So in that instance, there's no difference, no material difference presented. And the second procedural challenge is whether or not proceedings should have been consolidated without a Maury Lovano. And the test for consolidation is whether or not there's similar factual legal issues that are intertwined. In this case, Maury Lovano is the father of her three children. He similarly came to the United States a few months after her with the youngest children while she came in three months earlier with the oldest child. They both pursued marriage to a U.S. citizen. They were both placed in proceedings for lacking bona fide marriage to U.S. citizens, and there was some question whether or not they had a continued relationship with each other because they purchased a house together. And also, as testimony revealed later on, there was an I-751 petition to lift the conditions on Ms. Cruz's conditional residency, and it turned out he filled out that application. And that came from her daughter, right? Was it the daughter that testified to that? Yes. And so when you have all these common issues of fact, it was definitely proper to consolidate the proceedings. And moreover, there's no prejudice in this case. She had a full and fair opportunity to examine Mr. Lovano in her own proceedings. In a 2006 interview in support of the joint petition where she's asked where Mr. Lovano was, she says, according to the notes of the interviewer at the 2011 hearing, she believed, I quote, she believed that Mario Lovano was in Peru. Why doesn't that language suggest present location rather than permanent residence? So turning to the substantial evidence in this case, which supports the agency's decision, this is one of the grounds. You have her contemporaneous notes that Officer Iris Bonilla took, and it's in the record, and perhaps you're looking at that right now, and she writes down specifically in her handwriting, resides in Peru. There's no indication from her notes that she merely said he was physically located temporarily in Peru on vacation, as she would try to later explain in her testimony. And she also testified that was her recollection. Iris Bonilla testified she did not recall any impression being given by Ms. Cruz or Hector that Mario Lovano was temporarily residing or being physically in Peru. She had every representation made to her that he lived in Peru when at the time Ms. Cruz knew Mario Lovano resided in the United States. So that was a false statement to Officer Bonilla. Now, Petitioner noted, and Petitioner notes on page 41 of her brief, that the credibility of Petitioner, her husband, and her witnesses is essential to this case. And credibility is greatly in question here because there's a fraudulent document submitted in this case. As the government pointed out in our answering brief, this Court has precedent in Sievers-McCasey, a 2007 case, adopting the Latin maxim false in one thing, false in everything. Or if you submit a fraudulent document to the agency, at that point that discredits Petitioner's testimony and anything dependent on Petitioner's testimony. So Petitioner's testimony, as Petitioner states, is the essential element in this case. Her credibility is shot because she admitted to submitting this date-altered or fraudulent lease to the agency in support of the bona fides of her own marriage. And what you have that is dependent on her testimony is all these explanations that she gave to the immigration judge explaining the inconsistencies in her documentation. So if she claims she had a bona fide marriage to Hector Cruz, that suffers from a lack of credibility. When she claims she was not asked in the 2006 interview whether or not she rented that property at 214 Freeman Street, when in fact she owned the property at that time, that's dependent on her credibility versus Officer Bonilla's credibility. And when she also states that, I did not say Maria Lovano, the father of my children, resides in Peru, I merely meant to imply he lived there, that's dependent on her credibility versus the contemporaneous notes in the record. So all these things suffer from the fact that she perpetrated a fraud on the agency. But it's not just the fraudulent lease. As noted by the panel earlier, there's other discrepancies and other independent documentation. There's the W-2s and the tax returns from the years 2002 to 2005. Each year, there's a discrepant address for Hector Cruz in the W-2 that does not line up with the claimed joint marital address for that tax return for each year. And when Hector Cruz was given an opportunity to explain this, he said, bad credit. That same explanation he gave in his testimony in 2011, he gave it again in 2012, stating, my bad credit, I was avoiding creditors, and that's why I had this fake address I listed. So again, he's admitting to creating fake addresses, and I use it to escape creditors, but that is also dependent on his explanation, his credibility, and he is admitted to committing a fraud on the agency by creating this lease. So every turn, you have the agency having to depend on their credibility, but they have very little because of this fraud they perpetrated. So there's also the utility bills, there's similar affidavits, there's Morgan Lovano's three applications to the agency, his I-130, his I-485, his I-751, where each time he represented falsely to the agency that he did not have any children, much less children than Ms. Cruz. And to the agency, they reasonably concluded this was a bigger picture of trying to conceal a continued relationship. The fact they purchased a property together when they were supposedly married to other people. The fact that he concealed his children with her when they were married to other people. This, I think, under the substantial evidence standard, clearly shows a picture of fraud to the agency, at least, that does not compel a contrary conclusion. Is there anything at all in the record which suggests any kind of violent criminal activity? No. Mr. Palin, any other questions? Can you help, I know this is not part of the case, but just so I understand, what is it about this case that leads the government to say we want to put resources in this case as opposed to a case involving a criminal, a violent felon? When it comes to abuse of the marriage process, the government takes that seriously in a lot of instances. So it attacks the credibility of the whole process when you have non-bona fide marriages and you have people with real bona fide marriages trying to adjust status properly. The government prosecutes those cases. Thank you. If you have anything more to say. I have nothing else to add. Your Honors, the government here is relying on inconsistencies that do not go to the heart of the matter of whether Mrs. Cruz was married with Mr. Cruz, whether they lived a 214 Freeman. And the fact that they had a couple of documents that called into question does not mean that they did not have the opportunity to show corroborating evidence. The issue here is that the I.J. did not even consider the corroborating evidence because he held his hat on the falsum in uno, falsum in omnibus doctrine. That's exactly what this Court said was subject to limitations in C.A.A.W. because the very first limitation that it says is a failure to assess corroborating evidence. And in the second hearing, the judge simply said, well, we've heard a whole bunch of other evidence and testimony, but then doesn't address the merit of any of it. And it is insufficient when there is a document to just rest your hat on that one document. Judicial process requires that the judge consider and assess the other documentation that is submitted. And here, a marriage is an evolving relationship. It didn't just end with the submission of a date-altered lease, which, again, they proffered to the judge had been date-altered, so they didn't try to hide that any further. But there's no evidence that the judge considered any of the years after that 2006 date-altered lease, which included incredible hardship. The petitioner's husband became very ill. He was hospitalized. There were records showing that she was caring for him during all of his hospitalizations and amputations. He received all of his Social Security statements to their joint address. Federal income taxes continued to be filed every single year, joint bills in both of their names, commingled finances. None of this matters. None of this corroborating evidence. This corroborating evidence should have been assessed by the immigration judge. And the board's decision, which does not seem to care that none of that information was assessed, is in error and should be reversed. Thank you very much. Thank you. Thank you both. Thank you both for your good arguments. The court will reserve decision.